Good morning. It's now my privilege to represent Nye Saelee. And I want to talk about two issues here. There were three raised in the brief. With respect to the challenge made to the use of the third degree assault conviction, I would like to simply submit that argument on the briefs and discuss basically the use of the second degree sexual assault conviction as a predicate conviction for the career offender sentence enhancement. And I would also like to talk about the core level bump, which was noted in the pre-sentence report and would be relevant if this court finds that the second degree sexual assault conviction does not In this case, I don't know if the court has any questions, but in this case my argument was, as briefed here, was that looking at the Alaska statute that sanctions sexual penetration of an incapacitated person, that was the offense of which Mr. Saelee was convicted. And the specific statutory section that we look at has language in the statute which allows for a broader definition, potentially allows for a broader definition of incapacitated such that this would not qualify as a forcible sex offense. And I hang my hat, as it were, upon the language in the Alaska statute which says unless the context requires otherwise and gives a definition of incapacitated, that essentially says incapacitated is a person who is temporarily incapable of understanding that she was engaged in sexual penetration with the defendant. That's essentially how that's been, that's essentially how you read it, or basically unable to express fluently. But doesn't the case law say that that is typically inebriation, drug stupor, mental defect, or I suppose a person could be just flat-out unconscious? What other situations could that phrase refer to that is any different from the Louisiana statute that we interpreted in Riley? Well, because we're supposed to give meaning to every section of a, every piece of statutory language, and because I couldn't find any case specifically referencing the unless the context requires otherwise in Alaska case law, what I did find was, in fact, a second definition of incapacitated person in the Alaska statutes that arguably could be utilized in this context. Well, can you, I mean, I've given you the four categories that I can think of, and this is a fairly common rape statute in most states, that if the victim is for some reason unable to give consent that it constitutes rape. What other category could there be besides the four that I just gave you? I would like to respond to that question, but also reserve whether or not this is a typical statute of this type. Okay. There's a question of legal incapacity. In the Alaska statutes under the guardianship statutes, there's a definition of what constitutes an incapacitated person for the purposes of that statute that basically describes a situation in which a person who requires assistance in dealing with their daily needs is assigned by the court a guardian. And that is actually a designation of a person as an incapacitated person. I think that Isn't that the same situation with a person who's mentally incapacitated, retarded, for example? No, there are lots of people with developmental disabilities, schizophrenia, what have you, who aren't necessarily mentally unaware or But in Riley, it doesn't specifically account for that situation, both in the statute but also in the opinion, where it says Riley attempts to characterize this crime as nonviolent because the victim may initially consent to the sexual encounter, but lacks the legal capacity to do so. That's what I understand you to be saying. Well, I think what I'm saying is that with respect to looking at this Alaska statute, that That leaves open that possibility. Beg your pardon? That leaves open that possibility, that the person may consent but lack the capacity to do so. Well, no, I'm saying somebody who's designated as an incapacitated person under the Alaska statutes may still have the legal capacity to engage in sexual penetration. Well, they may have physical capacity, they may appear to consent, but No, they may actually be, I mean, there's nothing in the Alaska statutes that says that a person who's incapacitated for the purpose of the guardianship statutes is prevented from legally exercising their consent to sexual intercourse. Because guardianship, of course, can be imposed for a variety of different needs and problems. But it doesn't necessarily take away that individual's capacity to consent to sexual intercourse. So I guess my argument is that not only do we have this wiggly language, unless the context requires otherwise, but we actually have an alternative definition in the Alaska statutes of an incapacitated person that doesn't necessarily meet any parallel in Riley, because you could have a person who is, quote, incapacitated, but nevertheless has the legal capacity. But we don't have any Alaska case law that interprets unless the context otherwise requires language. We don't have any Alaska case law that defines that. And how does the language help you anyway? How does the language what? Help you anyway. Well, it helps me in this regard. We're looking at a statute to see whether or not the scope of conduct could exceed that of a categorical forcible sexual offense. My argument is that its expansive language suggests that this could encompass. But that language just allows for the possibility of a situation where the language could be summed up with a single example that fits within that. It's just a theoretical possibility. I don't know what. In and of itself, I don't see how that does it. Well, I think. It just allows some possibility. It might be a context. Maybe not one that exists now. Maybe the one that's created by future statutes or by future changes in the law or something. So I, I don't think that that is enough to face up to. Well, I think I think what it suggests, though, is that is that sex with an incapacitated person may encompass a scenario that is broader than a categorical forcible sex. This would be something that's incapacitated from. It has that legal characterization from a court appointment, perhaps, perhaps for being for being an incapacitated person. That may go to the consent issue. But how do you deal with our language in Riley that talks about as an element of whether this is a crime of violence that there is? I'm quoting from page 1159 of 183 F. Third, that it also subjects the victim to the physical risks associated with sexually transmitted diseases and pregnancy. As such, it creates a serious potential risk of physical injury and is therefore a crime of violence under 4B 1.2 8 2. We're talking about adults, not children. And I don't think this is what I know. What's the relevancy of the difference in age? It's the risk of disease and or pregnancy. Now, maybe a young child might not be able to get pregnant before a certain age or puberty. But certainly there's a risk of sexual disease that affects both adults and children equally. Of course, I agree with that. But where we're talking about forcible, the concern in Riley, I thought, had to do with a forcible situation where somebody comes to and is suddenly finding themselves and has consciousness now. Well, I think we were talking about the foreseeability of harm, which is what 4B 1.2 addresses in determining whether or not the criminal behavior poses or constitutes a crime of violence. And in this case, our court said that part of the violence analysis is what is a foreseeable injury to the victim. And sexually transmitted diseases and pregnancy, aside from battery and tearing and so on, are all part of that analysis, are they not? Well, with all due respect, Your Honor, I thought that this court has specifically not reached the question of whether or not sexual penetration inherently is a dangerous act. But Riley doesn't need to go that far. Riley simply says risk of disease is good enough. Oh, no, I thought, and I mean this with all due respect, I thought Riley, the risk that was addressed in Riley had to do with somebody being semi, you know, either asleep or unconscious or comatose or super and coming to. And that there's a risk created in that situation because then there's going to be resistance and there's going to be force. And that I thought that that was the serious risk that presented itself in Riley. I read it as a series of risks. I'm quite baffled by your argument. I guess I just don't understand. For Seminole, as for purposes of 410, it defines a bunch of terms. First of all, including this one, unless the context requires otherwise, meaning the linguistic context, right? You seem to be talking about the factual context. They haven't. I mean, because that term isn't defined, and I looked through the Alaska statute. That term, unless the context requires otherwise. But that's obviously what it means. It's a definitional section. And it's saying that this is what these words mean, unless in the particular linguistic context, it apparently means something else. Well, what do we do with the fact that there's a context, for example, elsewhere in the Alaska statutes that describes what an incapacitated person is? Wouldn't that be a context in which we might be dealing with a more expansive definition of what incapacity is? And that's my point. If it's limited to just statutory context, then elsewhere in the Alaska statutes is an alternative definition of an incapacitated person. It's factual. I think initially when I approached this, I was thinking, what if it's a factual context? What is what if it's factually variable? Then that's really problematical. But where is the other definition of incapacity? I just located this. It's at Alaska statute 13 point 26. Is that your briefing? It's not. I just I just located it yesterday. And I'll be happy to put it in a 28 day. But this is not the argument that there was an alternative definition. I wasn't aware that there was an alternative definition at the time. And what is the alternative definition? Is that the Alaska statute 13 26 0 0 5 incapacitated person is the person whose ability to receive and evaluate information to the extent the person lacks the ability to provide the essential requirements to the extent the person lacks the ability to provide essential requirements. That's essentially what an incapacitated person is. But that still goes to the consent issue, doesn't it? And if I'm right, if what we were talking about in Riley was more than simply consent to sexual intercourse, if the risk of harm is, in fact, a relevant factor to determine whether it's a crime of violence, then you've only addressed a portion of the foreseeable harm. Well, I think that my argument about the incapacitated person issue is that where the court could define incapacity effectively is based upon somebody's legal status and not whether or not they have the awareness that sexual penetration is taking place. I think that that expands the definition so broadly that it doesn't fit with, it doesn't comport with a categorical crime of violence. I'll reserve the rest of my time. Okay, we're good to go then. May I please the court? I'm Joanne Farrington, assistant United States attorney here in Alaska. Tailored cases are always somewhat frustrating. Judge Bedeen said in the Shepard decision that was destined to be reversed by the Supreme Court that there's surely an air of make-believe about this case. But nevertheless, I recognize both the constitutional and the practical reasons for the tailored case. Only because the government chooses to go on a categorical approach. I mean, you could prove up the offense as committed. That could have been done, though. And the reason we get into these problems of what Judge Bedeen referred to and what you referred to, which we've had in demonstration this morning here where the questions were asked, there's a real Alice in Wonderland aspect of it, is because the government doesn't choose to put in actual evidence. And maybe that's the thing to do, is to send the case back and have you guys prove it up and take away the make-believe aspect of it. Well, that's not necessary in this case. In some cases it might be. But in this case, I think that both of these offenses are on their face, categorical crimes of violence. They meet the first prong of the generic definition of trans violence. Let's let's talk about the sexual assault. First, that does seem to be the focus of concern. And I believe that Riley controls the decision in this case. The defense has attempts to distinguish Riley with an argument that at first I had trouble even understanding the definition of. Sexual assault in the second degree includes incapacitated victims. The phrase that the defense focuses on, unless the context requires otherwise, is an introductory phrase to an entire list of definitions. It's standard statutory language and it's linguistic. Unless one of these words is used in a way at some point in the statute that clearly indicates by context that it means something else, this is what it means. Incapacitated is then defined as temporarily incapable of apprising the nature of one's own conduct or physically unable to express unwillingness to act. If those two, there is no other factual context in which it could mean anything else and still constitute a violation of statute. The alternative definition of incapacitated that the defense has put forward today applies to different statutes for purposes. And that's why it says for purposes of this statute, it means incapacitated. Exactly. Explicitly so. That is the definition of incapacitated for purposes of the sexual offense statutes. And another definition somewhere else for other purposes in the Alaska statutes is irrelevant. Beyond that, I'm sure. And what does that include? The definition that was read to you this morning is somewhat. I understand. What? I'm sorry. Under second degree sexual assault. I know what the definition is in order to be incapacitated. An individual has to be temporarily incapable of appraising the nature of one's own conduct or physically unable to express unwillingness to act. One of those two factual conditions has to be met in order for the defendants to be guilty. And in the first category, you say you fit what? You fit the person who is drunk? A person who is so drunk that they are unable to understand the nature of their conduct. Or drug or drug or possibly a deep sleep. Possibly. At that point, they would be physically unable to express unwillingness to act, which is the alternative. I guess it would also be one of that. Right. And what about below the age of percent that that's not covered by the statute? That statutory rape is a separate offense defined separately. And why is that not covered? Explain that to me. Because a child is capable of appraising the nature of their conduct in general, unless it's a very small child, I suppose. Generally, I thought what was said was that that's the nature of being below the age of percent that you really can't that. You know, you may know exactly what you're doing. You may want to do it, but you can't fully appreciate the consequences, including the consequences of disease, the consequences of pregnancy, you know, consequences of physical injury. And so even though in some sense, the person sees and is able to speak and is able to. So to see, you know, know what's going on, they don't have by law that ability to appreciate it. And that's that's that's that's part of this. I'm just wondering why that does not apply here. Well, I would say, well, statutory rape may be a crime of violence under federal law. I was just suggesting that it it was not intended to be covered by the situation of an incapacitated victim. No, no. That's exactly what you are. You are. Your position is I'm trying to get you to persuade me that, in fact, you're correct about that. Well, I certainly want. Why is that phrase that you read me would not cover, let's say, a 12 year old. Would you read the phrase again? One thing it says temporarily. Well, that's the thing about you. Incapacitated means temporarily incapable of appraising the nature of one's own conduct or physically unable to express unwillingness to act. And my only point is that I don't think the statute was intended to apply to children. I certainly have never seen it applied to children. Alaska has other statutes that cover the situation of a child. I would not argue that this was that this covers that situation. Of course, of course, you wouldn't argue it because you are not talking to somebody for statutory rape. What you're trying to do is to make this fit within the categorical definition. That's right. The person arguing it would be opposing counsel who would say, look, the definition is broad enough to another prosecutor. Another time could bring a statute of rape conviction under prosecution under under that under that definition. So now you have to put yourself not in the shoes of a assistant United States attorney. You have to put yourself in the shoes of a district attorney of the language who now wants to prosecute some guy for having sexual relations with a girl who is. I don't know what the age of consent is here, but, you know, just below that. So it's temporary. She's about to call the special to be able to do it. Well, but she's not now, you know, and so it fits. So how would you how would you deal with that argument by the prosecutor? I can prosecute. I can prosecute for the century. Now, I think I understand the point that you're making that that if I knew if I threw enough words at you, I make myself understood. If the statute could be read as being broad enough to encompass statutory rape, is it still a crime of violence? And my answer to that would be yes. If a child is young enough that they are incapable of appraising the nature of their conduct, then I believe that is. And I believe that the president was quite right. By law, they're young enough until the night that they magically turn into adult. You know, when midnight they become social. One day before they are legally incapable of doing it. You know, an hour later or two hours later, when midnight passes and it's their birthday and they pass age of consent, they're magically able to do it. That's how the law works. You may be just as smart the night before, but you are below age of consent and therefore deemed by law incapable of assessing the risks. I don't believe that the statute covers the situation where it being presumption says incapable of appraising the nature of one's own conduct, which I understand to mean knowing what you're doing in a cognitive sense. And that's right. And I think it's a factual. Well, that's certainly one way of looking at it. But why isn't it? Why isn't it legally the legal inability to assess the risks? A person says, you know, I can understand, you know, I've studied these diseases. I know exactly what's going on. I would say too bad. By law, you can't do it. Well, why isn't that? Why? Why isn't that also perfectly good situation to follow that definition? Well, I focus on the word incapable there because I believe that's a factual word. It's the it's not we aren't going to let you as a matter of law do it. It's you are incapable of doing that, which I which I would read. This is a factual determination of the capability. OK, my time is up. Thank you. Thank you. I would like to have my remaining time if I could. Well, you don't really have it. Oh, I'm sorry. You have minus three and a half minutes. We'll give you a minute. So magically, I just want to check one thing. You agree that if we upheld the two priors, the pop up wouldn't matter. Well, well, you know, it was a it was an argument that was a challenge that was made to the pre-sentence report and was never ruled on by the court. I understand. And I think I think in terms of I think it does matter in this post poker context in this regard, which is if the court is looking at the whole range of conduct by the defendant and using that under thirty five fifty three to determine really what the nature of the offense is. And and yet it accepts as a given this factual discharacterization of the act that would basically allow for a sentence enhancement. I think it I think it's it's it's wrong to let that be undisturbed. What was kind of a default finding or acceptance of the pre-sentence report characterization? The the two priors made him a career. Yes. It is still a guidelines concept. There was still discretion involved. There was discretion involved and the court did exercise discretion. But obviously, if we assume that the court looked at the whole the whole nature of the offense, it made a wrong factual characterization to the extent its determinations can be read as accepting that four level bump. So I think a remand would be appropriate. Why can't the district judge under thirty five fifty three a look at the actual conduct set forth in the pre-sentence report without regard to the guideline calculation? And take the seriousness of the defendant's behavior into an account in fashioning an appropriate sentence in this case. Oh, it certainly can and should. And I think my point is that it it's not clear that the court did that because the court accepted. Well, the findings of the pre-sentence report. Right. And you don't challenge the facts of the pre-sentence report. Your argument was a legal one, as I understood it. No, it's a factual characterization. That's not what I'm asking. Maybe I'm not making my myself clear. The the district court was given a fairly detailed accounting in the pre-sentence report as to exactly what your client did at the pool hall. And as to the circumstances surrounding the incapacitated sex. And why can't the district court consider the factual details of what the defendant did under thirty five fifty three a in ultimately fashioning an appropriate sentence without regard to what the guideline would characterize that behavior? I completely misunderstood your question. We were talking about the emboldening, whether or not, in fact, his possession of the firearm was emboldened. Yeah. Which would have been an erroneous factual finding. First of all, what was in what was in the pre-sentence report was, by the way, a recitation from a complaint, which was not the document to which the defendant entered a plea of no contest. Now, but you're going back into guidelines analysis and I'm stepping away from the guidelines. Forget about the guidelines. Now I'm looking at a judge who is trying to determine under the statutory factors of thirty five fifty three a. What an appropriate sentence should be. What's a reasonable punishment for the crime that I'm going to sentence this individual on based upon his record of past crimes and criminal behavior as set forth in the details of the pre-sentence report? Well, I think that the focus of the court was somewhat different because of the Taylor analysis and Taylor analysis doesn't have anything to do with with what I'm talking about. Taylor analysis deals with guideline calculations and whether or not the court can look beyond certain admissible or noticeable documents in in determining enhancements. Well, I think there's no reason why the court can't. I mean, the court, in fact, under thirty five fifty three is supposed to look at the history of the defendant. Right. And so surely, you know, looking at the history of an offense of a past offense is can be part and parcel of that. But what the record in this case would seem to indicate is that the judge was his determinations were completely directed by related to with reference to the career offender determination. So why couldn't you be influenced that the assault with the firearm at the pool hall was a pretty serious assault with a firearm case? I mean, when you're pointing a loaded gun at somebody and telling them that their name is on the bullet that's in the chamber, that's a pretty clear felony assault. And why can't that behavior inform the district court's thinking in deciding whether or not this individual should be given maybe a little higher sentence than he would for a different kind of an assault that didn't involve such life threatening behavior? Well, I think I think it could, but I don't think that that's how the court's decision reads. I mean, on the flip side of that, then there's a second degree sexual assault for which he received no time in jail, a wholly suspended two year sentence. And so I don't I don't think the court's determinations really do reflect that specific consideration of the prior history. I mean, there's a certain amount and I realize we're struggling with it in our jurisprudence. There's a certain amount of tension here between the Supreme Court ruling that tells us that the guidelines are no longer mandatory and arguments that we are hearing from you and other good criminal defense lawyers that really wants to push us back into that mandatory system when it's to your client's advantage. But I'm still trying to decide what it means under this advisory system where the court has told us that what really counts is reasonableness. And for that, we must look at and articulate the thirty five fifty three factors in fashioning an appropriate sentence in a particular. With respect to this case, how I would answer that is, of course, I think it's wholly appropriate that in fashioning a post booker sentence that you get to consider the history of the defendant encompassing the prior offenses. But I don't think in this case that really occurred, because I think what happened was that the court really was preoccupied with those career offender characterizations and really did not. And there's nothing in the record that talks about the fact that the second degree sexual assault, for example, resulted in a wholly suspended two year sentence. But we had that before. And that's in the pre-sentence report. You can read it right on. But his decision making and how he tracks his decision making and the transcript of the imposition of sentence shows that he was completely fueled and directed by the by the sentencing guidelines. So, no, I think a more holistic approach is indicated by Booker. And I don't think it's it's necessarily present here on this record. Thank you. Thank you. That's a good one. Holistic. I like that. Holistic. That's a good one. We like that. It means almost anything you want to read. This is how you will stand submitted. Well, next year, I am in the state farm fire and have insurance companies. Hatch's.
judges: Kozinski, Berzon, Tallman